UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MICHAEL SATTARI,

    Plaintiff,

v.

WASHINGTON MUTUAL,

    Defendant.

Case No. 2:09-CV-00768-KJD-PAL

**ORDER**

    Presently before the Court is Defendant's Motion for Summary Judgment (#16). Plaintiff filed a response in opposition (#18) to which Defendant replied (#19).

I.  Facts

    Plaintiff Michael Sattari ("Sattari") is a licensed, but retired, real estate broker. Plaintiff purchased property located at 6533 White Swan Circle, Las Vegas, Nevada 89108. In order to refinance his loan, Plaintiff obtained two loans from GreenPoint Mortgage Funding, Inc. To secure the new financing, Plaintiff signed a Note, dated January 8, 2007, promising to pay $216,000.000. He also, as Trustor, signed a Deed of Trust, dated January 8, 2007, which was recorded in the Official Records of Clark County on January 18, 2007. He also signed a Second Note on January 8, 2007, promising to pay $49,000.00. In connection with the Second Note, he signed a Second Deed of Trust securing his promise in the Second Note. That Deed of Trust was also filed with Clark County on January 18, 2007.

Plaintiff's monthly payment on the Note was approximately $1,400.00 per month. He also was obligated to pay an additional amount monthly on the Second Note. Plaintiff also owned rental property purchased in 2006 for which he paid $1,500.00 monthly. That property generated rent in the amount of $1,250.00 monthly.

Prior to July 2007, Plaintiff was employed as a timeshare salesperson in Las Vegas, Nevada. He lost his job in July 2007. Between August 2007 and June 2009, Plaintiff's income was $318.00 per month in social security payments and $1,250.00 per month in rental income. In June 2009, Plaintiff's social security income increased to $730.00 per month.

In or about June 2008, Plaintiff was informed that Washington Mutual Bank ("the Bank") had taken over servicing of the Note.[1] He contacted the Bank to inquire about receiving a lower interest rate. He told the Bank that he wanted his rate lowered. In the Fall of 2008, he contacted the bank again to inquire about receiving a lower interest rate. Plaintiff was told that the loan would have to be in default to be eligible for a loan modification. Plaintiff took that to mean that he should stop making payments on his loan. He missed his first payment on October 1, 2008.[2]

As a result of his second call, Plaintiff expected some kind of paperwork. When he did not receive any, he called the Bank again. This time a meeting was arranged at a Chase office in Las Vegas, Nevada to discuss a potential loan modification. On February 9, 2009, as a result of his meeting, Plaintiff signed and submitted a "Borrower Assistance Form." Plaintiff requested a lower interest rate so that he could "resume payment." Plaintiff only disclosed $394.00 of monthly expenses, despite the $1,500.00 payment on the rental property. In March and April, the Bank reviewed Plaintiff's financial information. Plaintiff's only verifiable income was the $318.00 per

---

[1] The Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of Washington Mutual Bank on September 25, 2008. Chase purchased various assets of Washington Mutual Bank. Plaintiff named Washington Mutual Bank as the sole defendant in his complaint and served Washington Mutual at a Las Vegas branch located at 500 N. Rainbow, Las Vegas, NV 89107 on May 6, 2009. Chase filed the answer and the pending motion for summary judgment.

[2] Plaintiff was questioned during his deposition where he set aside the money that had been intended for his payments. When asked if it was in cash in his home, he answered, "Maybe." When pressed for a concrete answer, he said, "No, I don't." When asked where the funds were, again, he said, "I may have someplace."

2

month social security payment. The income from the rental property was disregarded due to the sizeable payment on that loan.

Though Plaintiff claims to have an oral agreement to modify the loan, Plaintiff admits that no material term was agreed upon. Though Bank personnel discussed interest rates around 4-5%, Plaintiff always asserted that those rates were not low enough. Eventually Plaintiff's request for a loan modification was denied on March 30, 2009, because Plaintiff had insufficient resources to make a payment. Plaintiff was sent a Notice of Default and Intention to Sell under Deed of Trust on January 29, 2009. Plaintiff was also sent Notice of Trustee's Sale on May 6, 2009. Plaintiff never cured the default. Sattari filed the present complaint on April 30, 2009. Defendant has now moved for summary judgment.

II.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n., 497

U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

III. Analysis

Defendant moves to dismiss each of Sattari's causes of action. Sattari raised a number of claims under California statute interspersed throughout the enumerated causes of action. However, it is undisputed that California law does not apply in this action. Accordingly, the Court dismisses all claims for violation of California statutes, including the Third and Fourth Cause of Action.

A.  First and Second Cause of Action

Plaintiff's first cause of action appears to be an action to quiet title. Construing Plaintiff's complaint liberally as the Court must, it also appears that Plaintiff is alleging fraud in the foreclosure process. However, the facts simply do not show fraud. Plaintiff asserts in his complaint, opposition to the motion for summary judgment and in his deposition testimony that the Bank was promising to modify his loan while attempting to secretly foreclose on his home. However, the foreclosure process was not done in secret. Defendant recorded in public records and sent to Plaintiff the required statutory notices: The Notice of Default and Intention to Sell as well as the Notice of Trustee's Sale. All Plaintiff was required to do to forestall foreclosure was to cure the default. See Collins v. Union Federal Sav. & Loan Ass'n, 662 P.2d 610, 623 (Nev. 1983)(a tort action for

wrongful foreclosure does exist in Nevada, but only if "no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of power of sale"). Here, Plaintiff admits that he was in default and that he could not cure the default.

Furthermore, other than his own self-serving testimony, Plaintiff has not adduced any other evidence that the Bank was telling him to not make payments. In response to the motion for summary judgment, Plaintiff claims to have shown through deposition of witnesses and modification advisors that "lenders" instructed and advised him to default. However, Plaintiff has not attached any deposition testimony from witnesses or modification advisors. "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. <u>Villiarimo</u>, 281 F.3d at 1061.

Plaintiff also asserts the statutory requirements were not met leading up to the noticed trustee's sale. However, Plaintiff does not name one section of the statutory requirements that were violated in the foreclosure process. At the end of Plaintiff's opposition, he does mention 15 U.S.C. § 1601, the congressional findings and declaration of purpose to the Truth in Lending Act, and 12 U.S.C. § 2605, Servicing of mortgage loans and administration of escrow accounts. Neither of these sections apply to the facts of his case. Furthermore, to any extent Plaintiff is attempting to amend his complaint, the Court would deny the motion to amend in accordance with Federal Rule of Civil Procedure 16 (a), because Plaintiff has failed to show good cause for failing to amend within the time set in the scheduling order (August 19, 2009) (#11). Accordingly, Plaintiff's First and Second Causes of Action are dismissed.

B.  Oral Agreement–Fourth Cause of Action

To any extent that Plaintiff's fourth cause of action for breach of oral agreement under California statute, states a cause of action under Nevada law, the Court must dismiss that claim. First, the facts clearly demonstrate that there was no meeting of the minds. See <u>May v. Anderson</u>, 119 P.3d 1254, 1257 (Nev. 2005)(a contract cannot exist when material terms are lacking or

uncertain and indefinite).  Furthermore, there was no consideration for the alleged agreement to forebear foreclosure.  See Murphy v. T. Rowe Price Reserve Fund, Inc., 8 F.3d 1420, 1423 (9th Cir. 1993)(gratuitous promises are not enforced in equity).  Finally, any alleged modification agreement as alleged by Plaintiff is barred by the statute of frauds.  See NRS §§ 111.210; 111.220 (agreements related to interests in real property are void unless in writing and signed by the party being charged); Dasco, Inc. v. Am. City Bank & Trust Co., 429 F. Supp. 767, 769 n.1 (D. Nev. 1977)(oral agreement to cancel note and deed of trust was void and unenforceable under Nevada's statute of frauds).  Accordingly, the Court dismisses any claims arising under this cause of action.

C.  Fifth Cause of Action– Negligent Infliction of Emotional Distress

Plaintiff's fifth cause of action is premised upon Defendant's alleged wrongful foreclosure and breach of oral agreement.  However, Plaintiff has not met his burden in raising genuine issues of material fact that Defendant acted improperly in the foreclosure process.  Plaintiff has thus failed to establish that Defendant caused his emotional distress in this action.  See Yu v. Signet Bank/Va., 69 Cal. App. 4th 1377, 1398 (Cal. App. Ct. 1998)(a lender may pursue its own economic interests without being subject to a claim for infliction of emotional distress).  The Court dismisses Plaintiff's claim for infliction of emotional distress.

IV.  Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (#16) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Defendant and against Plaintiff.

DATED this 29th day of September 2010.

_____
Kent J. Dawson
United States District Judge